UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | | |
|---|---|---|---|
| ANTONIO MATHIS | ) | | |
| | ) | | |
| Petitioner, | ) | Case Nos. | 1:13-cr-133-HSM-SKL-8 |
| | ) | | 1:15-cv-321-HSM |
| v. | ) | | |
| | ) | | |
| UNITED STATES OF AMERICA, | ) | | |
| | ) | | |
| Respondent. | ) | | |
| | ) | | |

**MEMORANDUM OPINION**

Petitioner Antonio Mathis ("Petitioner") filed a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (the "2255 Motion") [Doc. 483].[1] The United States of America (the "government") filed a response in opposition [Doc. 487]. Petitioner filed a reply [Doc. 489], and this matter is now ripe. For the reasons that follow, the Court finds an evidentiary hearing on the 2255 Motion is not necessary, and the 2255 Motion shall be **DENIED**.

**I.    BACKGROUND**

After a multi-agency investigation into a cocaine-trafficking conspiracy, which included physical surveillance, undercover drug purchases, and court-authorized wiretaps, a nine-count indictment charging Petitioner and 11 co-defendants was returned [Doc. 3]. Petitioner was charged only in Count One for conspiring to manufacture and distribute 280 grams or more of a cocaine base ("crack") mixture and five kilograms or more of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A) [*id.*].

---

[1] All citations to the district court record are to the underlying criminal case.

Pursuant to a written plea agreement, Petitioner pleaded guilty to the lesser-included offense of conspiring to distribute 500 grams or more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(B) [Docs. 236, 203]. As acknowledged during his plea colloquy and under his plea agreement, Petitioner specifically admitted his guilt and the supporting factual basis for his plea [*id.*].

As also acknowledged during his plea colloquy and in his plea agreement, Petitioner agreed to waive his right to file a direct appeal except that he retained the right to appeal a sentence imposed above the applicable advisory United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") range or any mandatory minimum sentenced determined by the Court [Doc. 203 at Page ID # 463, ¶ 9]. In addition, he waived the right to file any pleadings under 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel or prosecutorial misconduct not known to him by the time of the entry of judgment [*id.*]. In exchange for Petitioner's guilty plea to the lesser-included offense of Count One, the Government agreed to a three level reduction in Petitioner's Guidelines calculation for acceptance of responsibility [*id.* at Page ID # 461, ¶ 6].

The plea agreement, and the Court during the plea colloquy, also specifically advised Petitioner that the lesser-included offense he admitted committing carried a punishment of "imprisonment for at least five years and up to forty years; supervised release for at least four years and up to life; a fine up to $5,000,000; any lawful restitution; and a $100 special assessment fee." [*Id.* at Page ID # 458, ¶ 1]. Moreover, Petitioner acknowledged that any estimates or predictions made to him by his counsel (or anyone else) regarding any potential sentence was not binding on the Court and could not be used as a basis to rescind his plea agreement or withdraw his guilty plea [*id.* at Page ID # 460-61, ¶ 5].

As stated in the Revised Presentence Investigation Report ("PSR"), Petitioner was classified as a career offender pursuant to § 4B1.1 of the Guidelines because of his three prior felony drug convictions [Doc. 350 at Page ID # 1064, 1066-67, ¶¶ 17, 27-29]. The PSR calculated Petitioner's base offense level as 26 based on the amount of cocaine attributed to him, but his offense level was increased to 34 based on his status as a career offender [*id*. at Page ID # 1064, ¶¶ 16, 17]. Consequently, and after a three-level reduction for acceptance of responsibility, Petitioner had an offense level of 31, a criminal history category of VI, and an advisory Guidelines range of 188 to 235 months' imprisonment [*id*. at Page ID # 1065, 1067, 1070, ¶¶ 20, 33, 50].

Petitioner did not object to the PSR, but he did seek a below-Guidelines sentence [Docs. 349, 357]. Petitioner argued that his career offender designation resulted in a Guidelines range that was too high compared to that of his multiple co-defendants and did not account for the minimal sentences that he received for his prior felony drug convictions [Docs. 357, 474]. The Court ultimately imposed a below-Guidelines sentence of 152 months' imprisonment to be followed by four years of supervised release [Doc. 390].

In spite of the appellate waiver in his plea agreement, Petitioner filed an appeal.[2] This Court was affirmed and the appeal was dismissed when the Sixth Circuit Court of Appeals found no arguable basis on which to challenge the validity of [Petitioner's] guilty plea." [Doc. 474, at Page ID # 1749]. After upholding Petitioner's guilty plea and appellate waiver, the Sixth Circuit found "[m]oreover, even if there had been no appeal waiver, our independent review of the record reveals no non-frivolous basis on which to challenge [Petitioner's] sentence, which was both

---

[2] Counsel filed an *Anders* brief [Doc. 474]. *See Anders v. State of California*, 386 U.S. 738 (1967). Petitioner amended the *Anders* brief to raise the issue of his career offender enhancement [Doc. 462].

3

procedurally and substantively reasonable." [*Id*.]. The Sixth Circuit also granted defense counsel's motion to withdraw when upholding the Court's judgment [*id*.].

Petitioner timely filed his 2255 Motion.

## II. STANDARD of REVIEW

### A. Threshold Standard

Under 28 U.S.C. § 2255(a), a federal prisoner may make a motion to vacate, set aside, or correct his judgment of conviction and sentence, if he claims that the sentence was imposed in violation of the Constitution or laws of the United States; that the court lacked jurisdiction to impose the sentence; or that the sentence is in excess of the maximum authorized by law, or is otherwise subject to collateral attack. As a threshold standard, to obtain post-conviction relief under § 2255 a motion must allege: (1) an error of constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A petitioner bears the burden of demonstrating an error of constitutional magnitude that had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley,* 512 U.S. 339, 353-54 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). In order to obtain collateral relief under § 2255, a petitioner must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

Claims other than those of ineffective assistance of counsel are procedurally defaulted if not raised on direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001). "In the case where the defendant has failed to assert his claims on direct appeal and thus has procedurally defaulted, in order to raise them in a § 2255

motion he also must show either that (1) he had good cause for his failure to raise such arguments and he would suffer prejudice if unable to proceed, or (2) he is actually innocent." *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003). *See also Bousley*, 523 U.S. at 622-23. This hurdle a petitioner faces to excuse procedural default is "intentionally high[,]… for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Without a doubt, a defendant "may waive any right, even a constitutional right, by means of a plea agreement" if he does so knowingly and voluntarily. *See United States v. Toth*, 668 F.3d 374, 377 (6th Cir. 2012) (quoting *United States v. Calderon*, 388 F.3d 197, 199 (6th Cir. 2004), *accord United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001); *United States v. Ashe*, 47 F.3d 770, 775-76 (6th Cir. 1995). As a result, "a defendant's informed and voluntary waiver of the right to collaterally attack a conviction and sentence is enforceable." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *accord Davila v. United States*, 258 F.3d 448, 450-52 (6th Cir. 2001); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999). A waiver of such rights may be challenged only "on the grounds that it was not knowing and voluntary, was not taken in compliance with Fed. R. Crim. P. 11, or was the product of ineffective assistance of counsel." *United States v. Detloff*, 794 F.3d 588, 592 (6th Cir. 2015) (quoting *United States v. Atkinson*, 354 F. App'x 250, 252 (6th Cir. 2009)).

Rule 4(b) of the Rules Governing Section 2255 Proceedings in the United States District Courts requires a district court to summarily dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief[.]" *See also Pettigrew v. United States*, 480 F.2d 681, 684 (6th Cir. 1973) ("A motion to vacate sentence under § 2255 can be denied for the reason that it states 'only bald legal

conclusions with no supporting factual allegations.'") (quoting *Sanders v. United States*, 373 U.S. 1, 19 (1963)).

If the motion is not summarily dismissed under Rule 4(b), Rule 8(a) requires the court to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. Defendant's burden of establishing that he is entitled to an evidentiary hearing is relatively light. *Martin v. United States*, 889 F.3d 827, 832 (6th Cir. 2018). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). Where the defendant presents an affidavit containing a factual narrative that is neither inherently incredible nor contradicted by the record and the government offers nothing more than contrary representations in response, the defendant is entitled to an evidentiary hearing. *Martin*, 889 F.3d at 832 (quoting *Huff*, 734 F.3d at 607). An evidentiary hearing is not required if "the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* at 832 (quoting *MacLloyd v. United States*, 684 F. App'x 555, 559 (6th Cir. 2017) (internal quotation marks omitted).

### B. Standard for Ineffective Assistance of Counsel

Ineffective assistance of counsel is a recognized constitutional violation that, when adequately shown, warrants relief under § 2255. The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs claims of ineffective assistance of counsel raised pursuant to 28 U.S.C. § 2255. *Huff v. United States*, 734 F.3d 600, 606 (6th Cir. 2013) (citation omitted). That test provides that, to demonstrate a violation of the Sixth Amendment right to effective assistance of counsel, "a defendant must establish that his attorney's performance was

deficient and that the deficient performance prejudiced the defense." *Id*. (citing *Strickland*, 466 U.S. at 687).

The first prong requires a petitioner to show his attorney's performance was deficient by demonstrating that counsel's "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Stated another way, the petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. The Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct and instead [has] emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Huff*, 734 F.3d at 606 (alterations in original) (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)). A reviewing court must be "highly deferential" to counsel's performance, because:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Even if a petitioner is successful in overcoming that presumption, he must still satisfy the second prong of the *Strickland* test, *i.e.*, prejudice. Thus, a petitioner must show not only that his counsel's representation was objectively unreasonable, but also that he was prejudiced by counsel's deficiency because there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *McPhearson v. United States*, 675 F.3d 553, 563 (6th Cir. 2012) (quoting *Strickland*, 466 U.S. at 694).

Although the *Strickland* Court emphasized that both prongs must be established for the

7

petitioner to meet his burden, it held there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*.

## III. ANALYSIS

Petitioner's 2255 Motion, which consists of 45 pages of single-spaced type of mostly immaterial boilerplate, contains 17 numbered "grounds" for relief, although it skips numbers nine and 13 [Doc. 483]. The arguments and the headings for each ground do not always align and the grounds, which are often elusive, range from claims challenging the Court's subject matter jurisdiction and the validity of the indictment to allegations of a lack of due process and ineffective assistance of counsel. The Court, like the government, will address Petitioner's claims in two broad categories: (1) waived/procedurally-defaulted claims and (2) ineffective assistance of counsel claims.

### A. Waived/Procedurally-Defaulted Claims

Petitioner knowingly and voluntarily waived his right to file a § 2255 motion with few exceptions. As a result, he has waived his right to collaterally attack his conviction and sentence on many of the asserted grounds, such as the validity and sufficiency of the indictment, a claimed speedy trial violation, the validity of his plea, and the propriety of his career offender classification (Petitioner's grounds 1-8, 10, 14-17.).

Moreover, most of these waived grounds are also procedurally defaulted because Petitioner failed to raise them on direct appeal. *See Bousley*, 523 U.S. at 621. Petitioner has not attempted to show good cause for failure to raise his claim on appeal, prejudice if unable to proceed, or actual innocence. Although in his motion Petitioner occasionally appears to assert his innocence, he has

8

not established actual, factual innocence, nor cause and actual prejudice that could overcome his procedural default. Indeed, at one point in his 2255 Motion, Petitioner even concedes that he "is still guilty of the crime of conviction and the predicate offenses . . . . " [Doc. 483 at Page ID # 1806].

All of Petitioner's claims—other than the ineffective counsel claims—are waived and/or defaulted. While the government addressed the merits of these waived and procedurally defaulted claims, it is neither necessary nor a wise use of judicial resources for the Court to do so. Therefore, the Court will not consider these purported grounds as stand-alone claims, and will only address them to the extent they relate to Petitioner's claims of ineffective assistance of counsel.

**B. Petitioner's Ineffective Assistance of Counsel Claims**

**1. Career Offender Claims**

Although often difficult to fully ascertain, it appears that Petitioner originally claimed his rights were violated because his counsel withdrew and he was unrepresented during certain aspects of plea negotiations or sentencing [Doc. 483 at Page ID # 1791-1794 (Ground 11)]. In connection with this claim, Petitioner inexplicably contends he "was never appointed counsel until July 31, 2014." [*Id*. at Page ID # 1792]. As demonstrated in the government's response, the record completely refutes this claim as the Federal Defender Services of Eastern Tennessee, Inc. was clearly appointed to represent Petitioner on December 10, 2013 [Doc. 10], and attorneys from that organization continued to represent Petitioner throughout his criminal case. While an appellate specialist with Federal Defender Services filed her notice of appearance on behalf of Petitioner on July 31, 2014, along with a notice of appeal [Docs. 394, 395], prior to July 31 another member of the Federal Defender Services of Tennessee continuously represented Petitioner.

In his reply, Petitioner appears to attempt to clarify that he is contending he was not *effectively* represented in connection with plea negotiations and sentencing because his counsel failed to investigate the "real facts" of his prior convictions so he was wrongfully designated as a career offender [Doc. 489 at Page ID # 1852]. He also complains he did not know that he could be enhanced or classified as a career offender during the plea negotiations because his plea agreement did not mention he could be enhanced under U.S.S.G. § 4B1.1 [*id*.].

On September 16, 2010, Petitioner was convicted of Possession of Cocaine for Resale and Possession of Marijuana for Resale [Doc. 350 at Page ID # 1066, ¶ 27]. He received a suspended sentence of six and two years, respectively, and was placed on probation [*id*.]. Seven months later, Petitioner was arrested for and later convicted of Felonious Possession of Cocaine on April 24, 2012 [*id*. at Page ID # 1067, ¶ 28]. He received a suspended sentence of two years [*id*.]. On the same day, Petitioner was also convicted of Possession of Crack Cocaine for Resale—over 26 Grams [*id*., ¶ 29]. Petitioner received a suspended eight-year sentence in connection with this conviction, as well as a two-year suspended sentence for Possession of a Firearm During a Dangerous Offense [*id*.]. Because of Petitioner's 2012 convictions, his term of probation for his 2010 conviction was revoked and a sentence of 11 months, 29 days was imposed [*id*. at Page ID # 1066 ¶ 27].

Contrary to Petitioner's erroneous assertions, his three predicate offenses for his career offender classification undoubtedly involved controlled substances. *See* U.S.S.G. § 4B1.2(b) ("The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export,

distribute, or dispense."). *See also United States v. Woodruff*, 735 F.3d 445, 449 (6th Cir. 2013) (holding that to determine whether a prior conviction qualifies as a controlled substance offense under the Guidelines, a sentencing court applies the "categorical approach" and compares the statutory elements of the offense in question to the elements of a controlled substance offense as defined in section 4B1.2(b)). While Petitioner argues his counsel was ineffective relative to his handling of the career offender enhancement, Petitioner was correctly classified as a career offender under the Guidelines because of his three prior felony drug convictions. *See* U.S.S.G. § 4B1.1 (stating an individual is a career offender if (1) he was at least 18 when he committed the crime of conviction, (2) the crime of conviction is a felony crime of violence or a felony controlled-substance offense, and (3) he has been convicted of at least two other crimes of violence or controlled-substance offenses). Moreover, as stated by this Court at sentencing, it was only because of his counsel's "excellent" representation that the Court varied downward 36 months and imposed a significantly below-Guidelines sentence in spite of Petitioner's proper career offender designation [Doc 446 at Page ID # 1604].

"Competent representation [] demands that counsel explore the range of penalties a defendant is facing under likely guidelines calculation scenarios as completely as possible." *White v. United States*, No. 1:13-CR-89-HSM, 2018 WL 3058865, at *4 (E.D. Tenn. June 20, 2018) (quoting *Thompson v. United States*, 728 F. App'x 527, 533 (6th Cir. 2018). The plea agreement in this case specifically and accurately advised Petitioner that the lesser-included offense carried a punishment of imprisonment of not less than five and up to 40 years and supervised release for at least four years [Doc. 203 at Page ID # 458]. Moreover, Petitioner acknowledged that any estimates or predictions made to him by his counsel (or anyone else) regarding any potential sentence was not binding on the Court and could not be used as a basis to rescind his plea

11

agreement or withdraw his guilty plea [*id*. at Page ID # 461].  Petitioner also acknowledged that his sentence would be determined by the Court after reviewing the PSR based upon the entire scope of the Petitioner's criminal conduct, criminal history, and other factors and guidelines under 18 U.S.C. § 3553 [*id*.].  Even *if* counsel did not discuss with Petitioner the possible application of the guideline career-offender enhancement when addressing plea negotiations, the written plea agreement correctly informed Petitioner of the punishment range for the offense of conviction—and his sentence did not exceed that range.

Not only does the written plea agreement address the possibility that Petitioner's sentence could be up to the maximum penalty, a proper plea colloquy was performed and the Court fully explained to Petitioner the possible consequences of his guilty plea, including the minimum and maximum penalties he faced.  "The Sixth Circuit has consistently upheld the validity of the plea-colloquy advisement of rights to preclude later claims of misunderstanding alleged to result from misleading advice." *Thompson*, 728 F. App'x at 535; *accord United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) (holding defendant could not show prejudice on his claim that counsel overestimated the likelihood that the district court would impose a below guidelines sentence) (citing *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016)).  "The court's proper advisement of rights is thus deemed to 'foreclose' any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, he misunderstood." *Pola*, 703 F. App'x at 423 (quoting *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999)).[3]

---

[3] Moreover, the record lacks evidence to support finding *Strickland* prejudice, as Petitioner has not shown a reasonable probability that, but for his attorney's allegedly unreasonable assessment of the likely length of his sentence, he would not have entered the plea to the lesser-included offense.

The focus when examining ineffective assistance claims in the plea-bargaining process is not whether counsel's actions are reasonable but whether counsel's actions satisfied *Strickland*'s deferential standard. *McGowan v. Burt*, 788 F.3d 510, 515 (6th Cir. 2015) (citations omitted). "It is well-established that even 'an inaccurate guideline-range prediction by an attorney will generally not meet the requirement of deficient performance under *Strickland*.'" *Morris v. United States*, No. 1:12-CR-91-1-HSM-WBC, 2017 WL 1088289, at *7 (E.D. Tenn. Mar. 21, 2017) (quoting *United States v. Elliott*, No. 6:06-CR-101-DCR-1, 2011 WL 1793385, at *10 (E.D. Ky. Mar. 16, 2011) (citing *Thomas v. United States*, 27 F.3d 321, 325-26 (8th Cir. 1994))). As detailed in *Morris*, in *Elliott* the movant's attorney failed to predict a career offender enhancement that subjected the defendant to a guideline range of 262 to 327 months, as opposed to 121 to 151 months absent the enhancement. *Id.* Nevertheless, the court in *Elliott* found that counsel's conduct did not amount to ineffective assistance because the court had explained to the defendant the possible consequences of pleading guilty. *Elliott*, 2011 WL 1793385, at *10 ("In sum, an attorney's inaccurate attempt at predicting a movant's Guideline range does not constitute ineffective assistance of counsel, especially where the court fully explains the consequences of pleading guilty."). A similar result is reached here.

To the extent Petitioner endeavors to raise independent claims that he was improperly classified as a career offender, the valid and enforceable appeal waiver provisions of his plea agreement bar such claims. *See, e.g., United States v. Riggins*, 677 F. App'x 268, 271 (6th Cir. 2017) (enforcing waiver provision holding an erroneous Guideline calculation is not a miscarriage of justice that will void an appellate waiver); *United States v. Allen*, 635 F. App'x 311, 314-15 (6th Cir. 2016), *cert. denied*, 136 S. Ct. 2041 (2016) (enforcing waiver provision holding that because the defendant merely sought to challenge the district court's calculation of his advisory Guidelines

range, the district court's discretionary decision regarding the extent of the U.S.S.G. § 5K1.1 departure, and the consecutive nature of defendant's sentence, enforcing the waiver would not result in a miscarriage of justice); *United States v. Callier*, 565 F. App'x 423, 425-26 (6th Cir. 2014) (enforcing waiver provision holding that defendant waived his right to appeal sentence below statutory maximum and within relevant Guideline range); *United States v. Mathews*, 534 F. App'x 418, 426 (6th Cir. 2013) (enforcing waiver provision finding that a district court's supposed misapplication of the Sentencing Guidelines was the sort of error anticipated by appellate waivers in the plea agreement, because the alleged error did not result in a higher statutory mandatory minimum sentence than the offense charged in the indictment, nor did it result in a sentence above the statutory maximum).

In his 2255 Motion, Petitioner also briefly accuses counsel of misrepresenting facts, withholding information, and exerting pressure on him "to induce a guilty plea" making his plea involuntary [Doc. 483 at Page ID # 1797-98 (Ground 16)]. The Sixth Circuit has already determined that Petitioner knowingly, intelligently, and voluntarily entered the plea agreement, including the appeal and collateral attack waiver provisions [Doc. 474 at Page ID # 1749]. These claims are not only foreclosed by the Sixth Circuit's ruling on direct appeal, but they are also contrary to Petitioner's sworn representations during the plea colloquy that he pleaded guilty because he was guilty and had not been pressured to enter a guilty plea [Doc. 447 at Page ID # 1615-18, 1626]. Petitioner has not established any factual dispute requiring a hearing or a basis for relief under *Strickland*.

### 2. Conflict of Interest

Petitioner's other claim of ineffective assistance is equally unavailing. He claims that his attorney's "conflict of interest issues [caused] the Petitioner problems toward his cases." [Doc.

483 at Page ID # 1795 (Ground 12)]. As noted by the government, this claim seems to arise from a misunderstanding about the motion to withdraw filed by appellate counsel after filing the *Anders* brief. Petitioner quotes freely from *Anders*, but fails to link the quotations to the merits of his claim. To the extent Petitioner is indicating a misplaced belief that appellate counsel's filing of an *Anders* brief and motion to withdraw left him without counsel or prevented him from electing to represent himself [Doc. 483 at Page ID # 1781-82 (Ground 7)], he is mistaken.

An attorney who can find no non-frivolous issues to advance on appeal properly files an *Anders* brief to present all possible issues in order to fulfill the requirement that counsel be an "active advocate" for his or her client. *Anders*, 386 U.S. at 744. The Sixth Circuit properly invited Petitioner to present any additional issues on his own behalf, and he filed an amended brief. The Sixth Circuit has already reviewed the entire record, decided the *Anders* brief was appropriate, permitted appellate counsel to withdraw, and affirmed this Court on all issues raised [Doc. 474]. Petitioner's allegations of ineffective assistance based on the filing of an *Anders* brief are simply misplaced and foreclosed given the ruling of the Sixth Circuit in this case on direct appeal. *See United States v. McIntire*, No. 3:08-CR-38, 2009 WL 3401265, at *1 (S.D. Ohio Oct. 21, 2009) ("Since the question of whether the *Anders* brief was appropriate has already been decided by the Court of Appeals, reconsideration here is barred . . . .").

The Court will also briefly address Petitioner's related complaints that the Court refused to allow him to represent himself while simultaneously being represented by counsel. Specifically, Petitioner complains that the Court refused "to allow [him to] Control and Manage his Own case with Assistance" of appointed counsel, thereby allegedly forcing petitioner "to choose between self-representation without assistance or representation by counsel to the exclusion of his participation." [Doc. 483 at Page ID # 1781]. Petitioner also suggests that the federal courts "are

15

violating the Due Process and Counsel Clauses of the Constitution by . . . requiring most defendants to be represented by attorneys to the exclusion of defendant's participation." [*Id*. at Page ID # 1783 (Ground 8)]. Petitioner also claims that "publicly paid defenders . . . have a closer relationship with the government than with the defendant," such that requiring a defendant to choose between representation by a federal defender or self-representation is "a Faust[ia]n choice between two evils." [*Id*.]. In support of his claims that he was somehow forced to made a Faustian choice (i.e., a pact with the Devil), Petitioner claims his counsel "refused to investigate the alleged drugs or their alleged dates, nor the jurisdiction of the court," "negotiated a plea agreement with the government without the knowledge of the Petitioner," and "withdr[e]w from the case, citing conflict of interest when Petitioner requested that the plea agreement be withdraw[n]." [*Id*. at Page ID # 1787].

The record belies Petitioner's complaints. First, the record demonstrates Petitioner never sought to represent himself or to have counsel withdraw at any point in this case. Instead, during the plea colloquy, Petitioner swore that he had enough time and opportunity to discuss his case with his attorney and was satisfied with his attorney's representation [Doc. 447 at Page ID # 1612]. While counsel moved to withdraw from representing Petitioner upon filing an *Anders* brief on appeal, this took place well after Petitioner's guilty plea and sentencing.

A criminal defendant has no right to a combination of self-representation with representation by counsel. *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004) ("It is well settled that there is no constitutional right to hybrid representation."). By electing to be represented by counsel, Petitioner waived his right to present his own defense. *See United States v. Mosely*, 810 F.2d 93, 97 (6th Cir. 1987) ("The right to defend *pro se* and the right to counsel have been aptly described as two faces of the same coin, in that waiver of one right constitutes a

16

correlative assertion of the other." (citation omitted) (quotation marks omitted)). Petitioner has shown no ineffective representation in this regard.

### 3. Hearing

An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine*, 488 F.3d at 333 (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 335 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim."); *see also Amr v. United States*, 280 F. App'x 480, 485 (6th Cir. 2008) (holding that "the court is not required to hold an evidentiary hearing if the petitioner's allegations cannot be accepted as true because they are contradicted by the record."). For the reasons articulated above, the Court finds that Petitioner is not entitled to an evidentiary hearing. *See, e.g., O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961) ("Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing," much less relief).

## IV. CERTIFICATE OF APPEALABILITY

To obtain a certificate of appealability, Petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, Petitioner is required to show that reasonable jurists could conclude that the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Because Petitioner has failed to make a substantial showing of the denial of a constitutional right, reasonable jurists could not find the assessment of his claims debatable, and the issues presented are not adequate to deserve encouragement to proceed further, a certificate of appealability **SHALL NOT ISSUE**.

### V. CONCLUSION

For the reasons discussed herein, a hearing is unnecessary and Petitioner's 2255 Motion [Doc. 483] will be **DENIED** and **DISMISSED WITH PREJUDICE**.

AN APPROPRIATE JUDGMENT ORDER WILL ENTER.

                                                *s/ Harry S. Mattice, Jr.*
                                                HARRY S. MATTICE, JR.
                                           UNITED STATES DISTRICT JUDGE